O’BRIEN, Circuit Judge,
concurring.
Of one thing there can be no doubt, or at least no reasonable doubt: the deposits in both Big Horn Federal Savings Bank (BHFSB) and JPMorgan Chase Bank (JPM) are now federally insured and were federally insured when Iverson committed these banking crimes.. One can be sure of such things by going to the FDIC’s official internet site. It directs inquiries about FDIC-insured institutions' to its web pages: “FDIC BankFind allows you to locate ' FDIC-insured • banking institutions.” [1] And those pages do, indeed, show both banks to have been continuously, insured for . decades. For instance, all branches of BHFSB are federally insured and have been so insured since February 28, 1936.[2] See Appendix.. The bank was established in 1935 as a. Savings and Loan; in 1990 it changed its organizational type to “Mutual Savings Bank” and adopted its current name; and since July 2011 its regulatory agency has been the Comptroller of the Currency.[3] Id. Nothing on the website suggests a bank failure or a lapse in its federal deposit insurance. Id. The same is true of JPM.[4] None of this can reasonably be questioned. This case is not even remotely about significant facts. Iv-erson has not claimed or even argued that the banks were not federally insured when he committed these crimes, only that the proof of their federally insured status was inadequate.
I join Judge Hartz’s carefully crafted and compelling opinion. I write separately only to suggest an alternative basis for affirming. We can and should take judicial notice of the banks’ federally insured status during the relevant events. Doing so elevates substance over form and eliminates the need to wrestle with arcane evi-dentiary issues.
I. Judicial Notice in General
A judge or court may notice facts “not subject to reasonable dispute” because either .they are “generally known within the trial court’s territorial jurisdiction” or “can be accurately and readily determined from spurces whose accuracy cannot reasonably be questioned.” Fed.R.Evid. 201(b). Such notice may be taken upon motion or sua sponte, and at any .stage of the proceedings, even on . appeal. Fed.R.Evid. 201(c),(d) & advisory committee’s note (1972 Proposed Rules). It can be taken in both civil and criminal cases. But there is *1029 a difference — “[i]n a civil case, the court must instruct the jury to accept the noticed fact as conclusive” whereas in'a criminal case the jury must be instructed “that it may or may not accept the noticed fact as conclusive.” Fed.R.Evid. 201(f).
On that score the legislative history of Rule 201(f) is revealing: the civil/criminal divide came from Congress. United States v. Jones, 580 F.2d 219, 223 (6th Cir.1978); see also 1 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 2:10 (4th ed.2013). As the rule was originally proposed by the Supreme Court both civil and criminal juries would be instructed to accept judicially noticed facts as conclusive. Id. Congress rejected the proposal in favor of the current rule. Id. It was concerned that requiring a jury in a criminal case to accept as conclusive any judicially noticed fact would be “ ‘inappropriate’ as ‘contrary to the spirit of the Sixth Amendment right to a jury trial.’ ” Jones, 580 F.2d at 223 (quoting H. Rep. No. 93-650, 93rd Cong., 1st Sess. 6-7 (1973)). In doing so, it “intended to preserve the' jury’s traditional prerogative to ignore even uncontroverted facts in reaching a verdict” and to prevent a court from “effectively permitting a partial directed verdict as to facts in a criminal case.”[5] Id. at 224. Accordingly, trial courts and appellate courts generally may not take post-trial judicial notice of adjudicative facts in a criminal case to support a judgment against the defendant.[6] Mueller & *1030 Kirkpatrick, swpra, § 2:8, 2:10. But there is an important distinction.
II. Adjudicative Facts v. Legislative Facts
The rule applies only to “adjudicative” facts, not “legislative” facts. Fed.R.Evid. 201(a). We have described adjudicative facts as “simply the facts of the particular case” and legislative facts as those having “relevance to legal reasoning and the lawmaking process; they are established truths, facts or pronouncements that do not change from case to case but apply universally.” United States v. Wolny, 133 F.3d 758, 764 (10th Cir.1998) (citations and quotation marks omitted). The Eighth Circuit has expounded on their differences:
When a court finds facts concerning the immediate parties who did what, where, when, how, and with what motive or intent the court is performing an adjudicative function, and the facts are conveniently called adjudicative facts.
Stated in other terms, the adjudicative facts are those to which the law is applied in the process of adjudication. They are the facts that normally go to the jury in a jury case. They relate to the parties, their activities, their properties, their businesses.
Legislative facts, on the other hand, do not relate Specifically to the activities or characteristics of the litigants. A court generally relies upon legislative facts when it purports to develop a particular law or policy and thus considers material wholly unrelated to the activities of the parties.
Legislative facts are ordinarily general and do not concern the immediate parties. In the great mass of cases decided by courts, the legislative element is either absent or unimportant or interstitial, because in most cases the applicable law and policy have been previously established. But whenever a tribunal engages in the creation of law or of policy, it may need to resort to legislative facts, whether or not those facts have been developed on the record.
United States v. Gould, 536 F.2d 216, 219-20 (8th Cir.1976) (citations and quotation marks omitted); see also Mueller & Kirkpatrick, supra, § 2:2 (“[Ajdjudicative facts are the ‘who, what, where, and when’ of a lawsuit.... ”).
III. Applying the Distinction
■ In Gould, the defendants were charged with importing a Schedule II controlled substance (cocaine). 536 F.2d at 217. The statute defined a Schedule II controlled substance as, among other things, those substances containing coca leaves. Id. at 218. The evidence at trial included expert testimony that the substance imported contained cocaine hydrochloride but there was no direct evidence of cocaine hydrochloride being a derivative of coca leaves. Id. The trial court, however, took judicial notice of cocaine hydrochloride’s status as a Schedule II controlled substance and instructed the jury: “If you find the substance was cocaine hydrochloride, you are instructed that cocaine hydrochloride is a schedule II controlled substance under the laws of the United States.” Id. (quotation marks omitted). The Eighth Circuit concluded the trial court had not erred in taking judicial notice: “The fact that cocaine hydrochloride is derived from coca leaves is, if not common knowledge, at least a matter which is capable of certain, easily accessible and indisputably accurate verification.” Id. at 219. It also decided no error occurred in the trial court’s judicial notice instruction, which required the jury to accept the noticed fact as conclu *1031 sive, contrary to Rule 201. Id. at 219-21, It determined Rule 201' not to apply because the judicially-noticed fact was a legislative fact, not an adjudicative one:
It does not relate to who did what, where, when, how, and with what motive or intent, nor is it a fact which would traditionally go to the jury. The fact that cocaine hydrochloride is a derivative of coca leaves is a universal fact that is unrelated to the activities of the parties to this litigation.
Id. at 220-21 (citation and quotation marks omitted). Importantly, the court concluded the jury’s role in determining adjudicative facts was not preempted because it was required to determine what substance was seized. Id. at 220-21; see also United States v. Coffman, 688 F.2d 192, 194 (10th Cir.1980) (following the reasoning in Gould and finding no error in the trial court’s instruction to the jury that LSD was. a Schedule I controlled substance).
More to the point here is United States v. Davis, 726 F.3d 357 (2d Cir.2013). Davis assaulted another inmate while imprisoned at the Metropolitan Detention Center (MDC), a federal prison located in New York. He was charged with federal assault under 18 U.S.C. § 113(a)(6). Id. One of the elements of the crime — the so-called “jurisdictional” element — required the assault to occur “within the special maritime and territorial jurisdiction of the United States.” Id. At trial, the testimony of MDC employees identified MDC as a federal prison located on federal land. Id. at 360-61. Davis claimed the evidence was insufficient to establish an assault occurring within the special maritime and territorial jurisdiction of the United States. Id. at 362. The Second Circuit agreed. Id. at 364-65. Nevertheless, it took judicial notice of MDC’s status as an' institution within the special maritime and territorial jurisdiction of the United States. Id. at 367. In doing so it parted company with the trial judge, who had expressly refused “to take judicial notice of anything.” Id. at 366 (quotation marks omitted). Taking judicial , notice of a fact for the first time on appeal in a criminal case is noteworthy. The Second Circuit’s reason for doing so was well grounded; Rule 201 (f)’s proscription against taking conclusive judicial notice in á criminal case does not apply to legislative facts. Id. at 367. Similar to the Eighth Circuit’s approach in Gould, it reasoned: “[Wjhether a particular plot of land falls within the special maritime and territorial jurisdiction of the United States is a ‘legislative fact’ that may be judicially noticed without being subject to the strictures of Rule 201.” Id. It cited to other cases in which appellate courts noticed federal jurisdiction over particular lands even, where the prosecution had failed to present direct evidence on the issue; - “appellate courts take judicial notice of legislative facts under appropriate circumstances, especially where they relate to straightforward questions, such as geography and jurisdiction.” Id. (quotation marks omitted). Finally, and significantly, it expressed agreement with other circuits which have concluded that a defendant’s Sixth Amendment right to a jury trial, is not violated by taking judicial notice of legislative facts as they relate to the “jurisdictional” status of‘a particular piece of land. Id. at 369. It explained:
[T]o determine whether a crime took place within the special maritime and territorial "jurisdiction of the United States requires two separate inquiries: one to determine the ‘locus of the crime’ and one to determine the existence vel non of federal jurisdiction. While the former is plainly a factual question for the jury to decide, the latter — turning on a fixed legal status that does not change from case to case and involving consideration of source materials (such as deeds, statutes, and treaties) that judges are better suited to evaluate than *1032 juries — has always been treated in this Circuit as a legal- question that a court may decide on its own.
Id. (citation omitted); see also United States v. Behmanshah, 49 Fed.Appx. 372, 376 n. 2 (3d Cir.2002) (concluding evidence was sufficient to satisfy interstate commerce element of money laundering offense based on, inter alia, the use of an FDIC-insured institution; appelláte court the first, to notice the FDIC-insured status of subject bank) (unpublished).[7]
. These cases are highly persuasive, particularly Davis. .1 see no daylight between a federal prison’s status as being “within the special -maritime and territorial jurisdiction of the United States” and a bank’s status as being federally insured. Particularly when all national banks are required to have FDIC insurance[8] and Wyoming law also requires the same for all banks in the state.[9]' Rule 201 does not apply.
IY. Noticing the Obvious Does Not Infringe. Upon Iverson’s Rights
Noticing the FDIC-insured status of the financial institutions involved here does not interfere with Iverson’s right to a jury trial.[10] Like deciding (1) whether a crime took place within the special maritime and territorial jurisdiction of the United States *1033 (Davis) or (2) whether a defendant imported a Schedule II controlled substance (Gould),. determining whether Iverson defrauded a FDIC-insured bank requires two separate inquiries: one to-determine that Iverson did in fact defraud a certain bank and one to establish the existence of federal court jurisdiction. The former is clearly a question for the jury and the jury was so instructed in this case. (R. Vob 1 at 113 (requiring jury to find beyond .a reasonable doubt that “the defendant, .Marvin Iverson, knowingly executed a scheme or artifice to defraud Big Horn Federal Savings Bank and JPMorgan Chase Bank”)). The latter inquiry, on the other hand, is simply a legal question as to whether the bank is one with respect to which Congress can properly exercise its legislative powers.
Most of Iverson’s arguments are little more than background noise intended to distract us from the core issue, his nearly palpable guilt. After all, a properly instructed jury convicted him. It did so after being instructed that no conviction could lie if it entertained a reasonable doubt as to whether “[BHFSB] and [JPM] are financial institutions within the meaning of the law; in this case that-means the government must prove that [BHFSB] and [JPM] were insured by the [FDIC].” (R. Vol. 1 at 113.) At bottom, the question is whether a jury., could, so find on the -evidence presented after crediting all permitted inferences and the individual jurors’ common sense and life experiences.[11] With respect to the jury’s determination several matters inform the debate: (1) it is commonly accepted that mpst banks in the United States are FDIC insured, .(2) all national -ba,nks must be so insured, see supra n. 8, (3) in Wyoming all banks, must be FDIC insured, see -supra n. 9, (4) as Judge Hartz points out, evidence in the record reveals JPM’s written claim to be FDIC insured (Majority Op. at 1025-26), (5) the name, Big Horn Federal Savings Bank, is itself revealing, (6) Agent Smith’s testimony regarding his investigation may be thin but it is worthy of some consideration,[12] and perhaps most important, (7) the FDIC-insured status of the banks was virtually uncontested. One might ask how compelling must evidence be on an uncontested point.- Not very in a case such as this'where FDIC insurance is essentially collateral to the core issue — Iverson’s criminal acts — and where the evidence of *1034 those acts- (the “who, what, when, where, how and why (intent)”) is overwhelming.
Taking judicial notice of legislative facts is efficient; it is also appropriate when, as here, no substantial rights of the defendant are put at risk by doing so.

. https://research.fdic.gov/bankfind/detail. html?bank=29637&name=Big% 20Hom% • 20Federal%- 20Savings% 20Bank&sear-chName=BIG% 20HORN% 20FEDERAL% 20SAVINGS% 20BANK&search - =■ Fdic=&city=&'state=WY&zip=&ad- ■ [1] dress=fesearchWithin=&activeFlag=&ta-bld=2(last visited Feb.-25, 2016).

.- https://research.fdic.gov/banlcfind/detail. html?bank=29637&name=Big% 20Horn% 20Federal% 20Savings% 20Bank&sear-chName=BIG% 20HORN% 20FEDERAL% 20SAVINGS% 20BANK&sear chFdic'= &city= &state=WY&zip=&address=&searchWithin=&activeFlag=&ta-bld=2 (last visited Feb. 25, 2016).

. JPM was also FDIC-insured on the date of the crime but because wé need only one, see Musacchio v. United States, — U.S. -, 136 S.Ct. 709, 193 L.Ed.2d 639 (2016), for simplicity I will only refer to BHFSB.

. See also Mueller & Kirkpatrick, supra, § 2:10 ("Rule 201(f) as finally enacted is consistent' with the well-established principle that a court cannot - direct a verdict of guilty against a criminal defendant, in whole or in part, by instructing the jury to consider as proved a particular point or an element in a charge, no matter how conclusive the evidence. These limits on judicial control over juries in criminal cases have the effect of empowering juries to ‘nullify’ even the most strongly supported charges, and to acquit a defendant despitó overwhelming or indisputable evidence of guilt.”).

. Other concerns restrain an appellate court from taking judicial notice for the first time on appeal, whether in a civil or criminal case. Fact-finding is a trial court function. Routine-taking pf judicial notice on appeal would interfere with the trial courts’ role as fact-finders. Mueller & Kirkpatrick, supra, § 2:8. It would also effectively relieve a party from its duty to present facts in a timely fashion at trial. Id.; see also Gamer v. Louisiana, 368 U.S. 157, 173, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961) (refusing to take judicial notice for first time on appeal of facial relations existing in South as proof that defendants’ sit-in would "foreseeably disturb or alarm the public,” an element of the charge; "[t]o extend the doctrine of judicial notice to the length pressed by the respondent would require us to allow the prosecution to do through argument to this Court what it is required by due process to-do at the trial; and would be to turn the doctrine into a pretext for dispensing with the trial”).
These are valid concerns, but only as to judicial notice of adjudicative facts, not legislative ones. As Mueller and Kirkpatrick explain:
[JJudicial notice of adjudicative facts that help prove charges or defeat defenses on the merits is improper on appeal ... even though failure of proof, on the part of the prosecution generally bars retrial of the defendant, It is less clear [whether this proposition] should apply to post-trial judicial notice of facts relating to matters of subject matter jurisdiction or venue, as opposed to matters relating to culpability____It is one .thing to say that defendants in criminal cases are entitled to jury determinations, and to the protection provided by the standard of proof beyond a reasonable doubt, on elements relating to culpability. It is another thing to argue that defendants are entitled to such protections on points relating to the division of legislative responsibility between Congress and the states....
-Perhaps.with these points in the back of their minds, courts have in fact taken post-trial judicial notice of points relating to jurisdiction and venue, and there seems to be a growing trend toward making judges rather than juries responsible for deciding ■these points. Sound modern authority has concluded more generally that judicial -no *1030 tice in such settings lies beyond the reach of Rule 201. Mueller & Kirkpatrick, supra, § 2:10.

.While there is contrary authority, it uniformly fails to properly distinguish between legislative and adjudicative facts as courts have come to understand the distinction. In Jemes, -supra, the defendant was convicted of illegally intercepting telephone conversations. 580 F.2d at 221. One of the elements of the charge is that the telephone company which furnished and installed the tapped telephone be a “common carrier.” Id. at 221-22. The only evidence on this element at trial was that the tapped telephone was furnished and installed by South Central Bell Telephone Company. Id. The government, seeking .to save the conviction, requested the Sixth Circuit to take .judicial notice of the fact that South Central Bell is a "common carrier.” Id. at 222. While it acknowledged that Rule 201 . allowed judicial notice to be taken at any time, even on appeal, the court decided judicial notice was inappropriate. Id. at 223-24. It relied on Rule 201's requirement for a criminal jury to be instructed that it may, but is not required to, accept as conclusive a judicially-noticed fact. Id. at 223, According to the Sixth Circuit, this rule “plainly contemplates that the jury in a criminál cáse shall pass upon facts which are judicially noticed. This it could not do if this notice were taken for the first time after it had been discharged and the case was on appeal.” Id. at 224.
Jones failed to distinguish between adjudicative facts, covered by Rule 201, and legislative facts, not within the scope of Rule 201. The common carrier element, involved in Jones is a legislative fact for the same reasons the status of the drugs in Gould, the status of ■the property in Davis, and (as I discuss) BHFSB’s FDIC-insured status are all legislative facts.
Similarly, in United States v. Bliss, we refused to take judicial notice of the fact First National Bank of Green River was a member of the Federal Reserve System as required by the crime of conviction (falsifying bank records) because no request had been made by the government. 642 F.2d 390, 391-392 & n. 2 (10th Cir.1981). In any event, relying on ■Jones, we questioned the propriety of doing so. Id. at 392 n. 2. But, even assuming it was proper, "we decline[d] to exercise our discretion and judicially notice these facts.” Id. Given that holding, our reliance on Jones in our Bliss opinion was dicta.
Finally, Garner, supra, is not to the contrary. Whether defendants’ actions would “foreseeably disturb or alarm the public,” 368 U.S. at 165, 82 S.Ct. 248, is an adjudicative fact, not a legislative one. Taking judicial 'notice of such adjudicative fact for the first time on appeal would have been improper -under Rule 201.

. . See http://www.helpwithmybank.gov/get-answers/other-topics/fdic-insurance/faq-other-topics-fdic-insurance-04.html (last visited'Feb. 25, 2016),

. Wyo. Stat. Ann. § 13-2-103 (“All banks .shall obtain insurance of their deposits by the United States and shall subscribe for insur- ’ anee of deposit accounts by the federal deposit insurance corporation (FDIC).”).

. See, supra, discussion at 1030-32.

. See United States v. Truong, 425 F.3d 1282, 1288 (10th Cir.2005) ("We review claims of insufficient evidence de novo, but view the evidence, as well as the reasonable inferences that could be drawn from it, in the light most favorable to the government, An inference is reasonable if the conclusion flows from logical and probabilistic reasoning.’’) (citation and quotation marks omitted); Webb v. United States, 347 F.2d 363, 364 (10th Cir.1965) ("[T]he jury’s function [in a criminal case]' is broad enough to allow it to make common sense inferences from proven facts....”); see also United States v. Durham, 211 F.3d 437, 441 (7th Cir.2000) ("[I]t is well established that juries are allowed to draw upon their own experience in life as well as their common sense in reaching their verdict. While common sense is no substitute for evidence, -common sense should be used to evaluate what reasonably may be inferred -from circumstantial evidence.”) - (quotation marks omitted).

. The government apparently forgot to present proof of the banks’ FDIC-insured status, creating a last-minute scramble to recover. Iverson recognized its oversight as a possible "gotcha” moment, not one .requiring substantive evidence or argument, but only a technical objection. The government’s feeble attempts to recover from its self-inflicted "gotcha” are "puzzling. With the technological tools available in a modern federal courtroom one would expect the government to have presented the juty with a real time look at the FDIC website. All it takes is a computer connected to the internet and a monitor enabling jurors to view the available information. Doing so would have saved the government and us considerable angst.